DOMENGEAUX, Judge.
Plaintiff brought this suit seeking worker’s compensation benefits for partial disability under the provisions of La.R.S. 23:1221. After trial the lower court found plaintiff to be partially disabled and awarded him penalties and attorney’s fees. From that judgment defendant has appealed and plaintiff has answered the appeal asking only for an additional amount of attorney’s fees to cover the cost of defending this appeal.
The trial court gave extensive well-written reasons for judgment. We take the liberty of quoting portions of those reasons which we adopt as our own and to which we will add further comment. The trial court’s reasons for judgment state:
“... The plaintiff, Richard M. Butts, was employed by the defendant, the Procter and Gamble Company. While working in the defendant’s plant on April 3, 1979, plaintiff slipped and fell and injured his left knee. Defendant paid plaintiff weekly benefits for various periods and medical expenses until March 7, 1980, on which date defendant terminated plaintiff for excessive absences and paid him a lump sum of $6,778.00, which represented advanced payment of benefits for 159 weeks at $42.00 per week under L.S.A.-R.S. 23:1221(4)(o) dealing with the permanent/partial loss of use or function of a member of the body. Thereafter plaintiff filed his suit on May 27, 1982 contending he is permanently and partially disabled and entitled to benefits under L.S.A.-R.S. [23:] 1221(3). Plaintiff also seeks penalties and attorneys fees. The matter was tried on May 17-20, 1983, and the evidence was held open for an additional deposition by Doctor T.E. Banks. The case was submitted on briefs filed by plaintiff and defendant.
“The issues are:
“(1) Is plaintiff entitled to benefits for partial disability under L.S.A.-R.S. [23:] 1221(3)?
“(2) Is plaintiff entitled to penalties and attorneys fees?
“There is no dispute that beginning in 1977 plaintiff worked as an upper level operator, or Technician III, for defendants at its plant near Pineville, Louisiana. His duties required that he climb steps between three levels in the plant, that he climb up into and clean soap storage bins, clean the transfer conveyers from the bins to the packing area, generally sweep and mop the *267 area, handle 100 pound sacks of material used to make glue, wash down the stairs on the first and second floors of the plant with a scraper and scrub brush, monitoring the pangborn operation during the soap making process and poking the bins. On April 3, 1979, plaintiff was cleaning a storage bin. As he descended the stairs that provided ingress and egress to the bin, he slipped and fell three or four feet, landing on his left knee. Plaintiff reported the accident to his immediate supervisor, Jimmy Humphries. The next day the plaintiff was seen by Doctor William Brown, the company physician, who referred plaintiff to Doctor Douglas Gamburg, an orthopaedic specialist in Alexandria.
“Doctor Gamburg saw plaintiff on April 4, 1979 and continued to see and treat him through May 14, 1979. It was this physician’s opinion that as a result of the work related accident on April 3, 1979 plaintiff had aggravated a pre-existing patello femoral erepitance and arthritis of the left knee, as evidenced by pain and modest effusion. Doctor Gamburg prescribed drugs and release from any duties which required climbing or squating. [sic]
“On May 21, 1979, plaintiff saw Doctor T.E. Banks, also an orthopaedic surgeon in Alexandria. Doctor Banks had previously seen and treated plaintiff for an injury to his left knee in 1970, when plaintiff, who is now 32 years of age, had just graduated from high school. During 1970, Doctor Banks also saw plaintiff for a problem with his right knee. In 1973, Doctor Banks had again seen plaintiff for a football injury to his left knee. In his May 10, 1983 deposition, Doctor Banks explains that plaintiffs problems with both knees go back to his adolesence [sic] and that he suffered knee injuries several times, one incident being an automobile accident and another being a football injury. It was Doctor Banks’ opinion that the difficulty is primarily a patello femoral abnormality which has progressively worsened due to the traumatic injuries. When Doctor Banks saw plaintiff on May 21, 1979, he was of the opinion that the April 3, 1979 injury at the Procter and Gamble Plant aggravated the pre-existing condition, as was evidenced by acute post-traumatic bursitis. He found no effusion on that occasion and recommended that plaintiff could return to light duties which did not involve climbing, squating, [sic] or twisting of the knee.
“Plaintiff returned to work performing light duties, but he continued to complain of pain in his left knee, so the defendant sent him to see Doctor D.M. Kingsley, also an orthopaedic surgeon in Alexandria. Doctor Kingsley first saw plaintiff on June 27, 1979. This physician diagnosed a flap of cartilage loose on the left patella and also a small rough spot on the condyle of the femur. On July 3, 1979, Doctor Kings-ley performed surgery to remove the flap of cartilage and shave smooth the rough area on the femur.
“Following this surgery, plaintiff returned to work at Procter and Gamble on September 11, 1979. He was assigned light duties which did not involve climbing, squating, [sic] stooping or strenous[sic] weight bearing. Defendant created for plaintiff a special job classification, entitled “Modified Technician III”. Generally, these lighter duties included cleaning up the work area and riding a tugger used to pull trash cans out to a dump where he used a fork lift to dump the cans. Additionally, plaintiff was permitted to sit down and rest whenever his left knee experienced pain or discomfort.
“One of the issues at trial was whether plaintiff was disabled from performing the duties of this light duty job. Plaintiff testified that even these light duties continued to cause pain and swelling in his left knee. This testimony was corroborated by plaintiff’s wife and his mother as well as a Reverend Don Privett who testified that during this period when plaintiff was performing the modified job duties, he experienced pain and swelling in his left knee. On the other hand, the officials at Procter and Gamble went to great lengths in an effort to prove plaintiff could perform all of the duties of the modified job. Apparently, Procter and Gamble takes great *268 pride in rehabilitating injured employees. According to the testimony of their claims manager, this is the first case that has ever been tried against them for worker's compensation benefits. They actually had Doctor Banks go to the plant and view the tugger and the fork lift and the other equipment used by plaintiff on the modified job and review the duties of that job. Doctor Banks expressed the opinion that at the time he thought plaintiff could perform all of the duties of the modified job. Also, defendant points to the testimony of Doctor Kingsley who reviewed the duties of the modified job and stated that he thought that at the time plaintiff could probably perform those duties.
“The court does not find it necessary to decide whether plaintiff was disabled from performing the duties of the modified job. Regardless of this issue, the fact is that on March 7, 1980, Procter and Gamble terminated plaintiff’s employment for excessive unexcused absences from the modified job. Following this termination, plaintiff applied for and began receiving unemployment benefits, and he sought other employment. In November and December of 1980, and January, 1981, he worked part-time for Value Mart in Colfax, Louisiana. During February, 1981, plaintiff was employed by TG & Y in a managerial trainee program. Eventually, he became an assistant manager at the TG & Y store in Many, Louisiana, where he was still working at the time of the trial of this case. His duties as an assistant manager at TG & Y are principally supervisory, but occasionally he does squat and lift boxes to re-stock shelves, and he is on his feet walking in the store much of the time. However, the evidence is clear that his duties as assistant manager at TG & Y do not require the strenuous climbing, squaring [sic] and lifting which were a part of his duties at Procter and Gamble at the time of the accident.
“In July of 1981, plaintiff returned to Dr. Banks with complaints of pain and swelling in the left knee. The doctor found objective evidence that the condition had worsened. Since that time, plaintiff has continued to see Dr. Banks, the last occasion being on April 27, 1983, at which time the doctor found effusion and ½ inch of atrophy of the left thigh. Dr. Banks also found that the right knee was becoming worse. The doctor’s final opinion is that plaintiff’s condition in both knees is getting worse, and that he is a candidate for surgery. Dr. Banks testified in his May 10, 1983 deposition that he had recommended surgery but plaintiff refused, giving as his reason that he was financially unable to pay the cost.
“The first issue is whether plaintiff is partially disabled under the provisions of LSA-R.S. 23:1221(3) which provides as follows:
“ ‘(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability.’
“The above statute was construed by our Supreme Court in the recent case of Naquin v. Uniroyal, Inc., 405 So.2d 525 (La. 1981), in which plaintiff, an operations coordinator, fell and injured his left shoulder, resulting in partial loss of use of his arm. The court found the facts showed plaintiff could not perform all of the manual duties of his job at the time of the accident. The Supreme Court opinion states:
“ ‘[1] We reverse the decision of the Court of Appeal because it incorrectly implies that La.R.S. 23:1221(3) requires a *269 partial disability claimant to prove loss of employment due to his work-related injury. The statute clearly provides that an employee is eligible for compensation for a partially disabling work-related injury regardless of whether his employment continues; only the amount of compensation due may be affected by wages actually earned after the injury.
⅜ ⅜ * ⅜ ⅜ *
“While Naquin’s position was principally supervisory in nature, the exceptions clause in the collective bargaining agreement and the testimony of Naquin and his co-workers demonstrate that because of his work-related disability Naquin cannot perform some acts of manual labor he carried out before his injury. Although those physical tasks were incidental to his supervisory job, they were expected by his employer and important to the effective performance of his work as a supervisor of other workers. That his employer retained him at full pay regardless of his partial incapacity does not make his impairment any less real. Accordingly, we conclude that the significant tasks Naquin can no longer perform were employment duties in which he was customarily engaged when injured, and that because he can no longer carry them out he is entitled to benefits for a partial disability in accordance with the worker’s compensation statute. La.R.S. 23:1221(3).’
“See also Conlay v. Houston General Insurance Co., 370 So.2d 196 (La.App. 3 Cir.1979), in which the court found the claimant partially disabled under facts substantially similar to those in the present case.
“Under the facts and the law as stated above, I conclude the plaintiff in the present case is partially disabled. Clearly, he cannot perform the duties of the job in which he was engaged at the time of the accident, or of any similar job which requires climbing, squating [sic] and heavy lifting. Even if plaintiff could have performed the duties of the modified light duty job, as Procter and Gamble contends, this does not disqualify plaintiff for benefits for partial disability.
“Of course, under the statute as above quoted, the defendant is entitled to credit for any wages actually earned. There is considerable testimony in the record to show the amounts of these earnings, but if the evidence is insufficient or if the parties are unable to agree on the amount of the credit, this issue can be resolved by a later rule to fix the amount of the compensation. The right to file such a rule is reserved to both parties.
“The next issue is whether the defendant is liable for penalties and attorney’s fees. The record shows that after plaintiff was dismissed for excessive unexcused absences, he made demand for worker’s compensation benefits for partial disability. Procter and Gamble rejected this demand on the grounds that plaintiff was entitled only to benefits for loss of use of a member of the body. The defendant was clearly arbitrary in taking this position. The medical reports of Drs. Kingsley and Banks in defendant’s possession at the time it denied partial disability benefits showed plaintiff could not perform the work in which he was engaged at the time of the accident. Although these physicians thought plaintiff could perform the lighter duties of the modified job, that was not a position of the same or similar character for which he was fitted by training and experience. This is supported by the fact that on his termination he had to go to work at a less strenuous job earning a lesser wage.
“It was necessary for plaintiff to file suit to secure the benefits and medical expenses to which he is clearly entitled. The defendant is liable for penalties as provided by the Statute and for a reasonable attorney fee in the sum of $7,500.00.”
After the written reasons were assigned judgment was signed on October 4, 1983, awarding judgment:
“... in favor of plaintiff, RICHARD M. BUTTS, and against the defendant, THE PROCTER AND GAMBLE COMPANY, for weekly compensation in the amount *270 of ONE HUNDRED FORTY ONE DOLLARS & NO/100 ($141.00) DOLLARS, per week commencing February 25th, 1980, through February 25th, 1981; and for weekly compensation in the amount of NINETY NINE DOLLARS AND 87/100 ($99.87) DOLLARS, commencing February 26th, 1981, through February 25th, 1982; and for weekly compensation in the amount of EIGHTY TWO DOLLARS & 27/100 ($82.27) DOLLARS, commencing February 26th, 1982, because of and during the period of his partial disability, subject to a credit of any compensation previously paid;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the defendant, THE PROCTER AND GAMBLE COMPANY, be and is hereby condemned to pay to the plaintiff, RICHARD M. BUTTS, attorney’s fees in the amount of SEVEN THOUSAND FIVE HUNDRED DOLLARS & NO/100 ($7,500.00) DOLLARS, said amount to bear legal interest from the date this Judgment is signed;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above amounts bear legal interest from the date due plus the statutory penalty of 12% is due on the above amounts of compensation.”
On appeal, the defendant claims the trial court was in error in failing to allow it a credit for the worker’s compensation paid to plaintiff prior to the trial court’s award. From the outset it should be noted that both the judgment and the written reasons for judgment state that defendant is entitled to a credit based upon the worker’s compensation previously paid and the amount of wages plaintiff was earning subsequent to his termination at Procter and Gamble.
Defendant’s argument is that it is entitled to: (1) A credit for $141.00 per week for the period between February 25, 1980 until March 7, 1980; (2) A credit for $42.00 per week for 159 weeks beginning March 7, 1980; and (3) A credit for an undetermined amount because of the plaintiff’s employment at TG & Y.
As to the first two items we find the record amply supports that defendant did in fact make these payments and is thus entitled to a credit for both in accordance with La.R.S. 23:1221. The judgment recognizes this.
As to the third item, there is no doubt the defendant is entitled to a credit based upon the earnings plaintiff received from his employment at TG & Y. See La.R.S. 23:1221. However, the record does not adequately show what that amount should be. Further, as pointed out by the trial judge the right to file a rule to fix that amount was reserved to both parties. See La.C.C.P. Art. 1951.
Plaintiff has answered the defendant’s appeal asking only for an additional award and attorney’s fees to cover the cost of defending this appeal.
The trial court assessed $7,500.00 against Procter and Gamble as an award for plaintiff’s attorney’s fees. In some cases that amount would be adequate compensation for the services rendered at trial and on appeal. See discussions and citations in Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979), writ denied, 379 So.2d 1102 (La.1980). However, because of the circumstances of this appeal we feel plaintiff is entitled to an additional $500.00 award of attorney’s fees for the legal services rendered in connection with this appeal.
For the above and foregoing reasons the judgment of the trial court is affirmed. We award plaintiff the additional amount of $500.00 as attorney’s fees for a total award of $8,000.00 for this item.
All costs of this appeal are assessed against defendant-appellant.
AFFIRMED AS AMENDED.